IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GLENN WM. GREEN-EL, #297256 | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. AW-06-835 |
| J. MICHAEL STOUFFER, et al. | * | |
| Respondents. | | |
| | *** | |

**MEMORANDUM**

On March 30, 2006, the Clerk received for filing Glenn Wm. Green-el's ("Petitioner") 28 U.S.C. § 2254 action attacking his 2004 convictions and sentences imposed in Circuit Court for Baltimore City on violation of probation and drug offenses. Paper No. 1. Petitioner did not file a reply to Respondents' Answer.

After due consideration of the pleadings and exhibits, the Court sees no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

**I. Procedural History**

On October 19, 1999, Petitioner pleaded guilty to possession with intent to distribute a controlled dangerous substance in the Circuit Court for Baltimore City. Paper No. 11, Ex. 2. He was sentenced to 12 years, with all but 2 days suspended, and 4 years supervised probation. *Id*.

On April 3, 2003, Petitioner was charged with possession with intent to distribute a controlled dangerous substance.[1] *Id*., Exs. 1 & 9. On or about November 2, 2004, a violation of probation warrant was issued on the 1999 conviction, and assigned to Circuit Court Judge John Glynn. *Id*., Ex. 2. The violation of probation case before Judge Glynn was transferred to the case

---

[1] A conviction on the new charge would have violated the probation imposed in 1999.

on the new drug charge and the cases were heard on June 28, 2004, before Baltimore City Circuit Court Judge Joseph P. McCurdy. Paper No. 11, Ex. 3. Petitioner agreed to plead guilty to the new possession with intent to distribute charge and the violation of probation charge in exchange for the imposition of concurrent 5-year sentences. *Id*., Ex. 3 at 13. Judge McCurdy engaged in a colloquy "to be satisfied that [Petitioner] freely and voluntarily entered into" the plea. *Id*., Ex. 3 at 15-19. Judge McCurdy accepted Petitioner's plea and found that the agreed statement of facts placed into the record supported the plea. He found Petitioner guilty of distribution of cocaine and violation of probation and sentenced him to concurrent 5-year terms. *Id*., Ex. 3 at 20-21. .

On August 27, 2004, Petitioner filed a petition for post-conviction relief in the Circuit Court for Baltimore City, raising approximately 25 grounds, the majority of which went to the effectiveness of stand-in counsel. Paper No. 11, Exs. 4, 6, & 7.

On August 17, 2005, a post-conviction hearing was held before Circuit Court Judge Edward R.K. Hargadon. *Id*., Ex. 8. On October 21, 2005, post-conviction relief was denied. *Id*., Ex. 9. Petitioner filed an application for leave to appeal on November 3, 2005. The Court of Special Appeals of Maryland denied the application on March 13, 2005, and the mandate was issued on April 12, 2006. *Id*., Exs. 10 & 11.

In his § 2254 application Petitioner claims that he was convinced to take a plea agreement on the advice of a lawyer who was not his attorney of record and who was merely a stand-in for his actual attorney. Paper No. 1 at 5. He alleges that stand-in counsel did not enter his own appearance and should not have been permitted to advocate on Petitioner's behalf. *Id*. Petitioner further asserts that stand-in counsel's representation was ineffective, illegal, and unauthorized, as he was just there to enter actual counsel's appearance and to request a postponement. *Id*.

**II. Threshold Considerations**

**A.  Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court.  He has exhausted the claims presented here.

**B. Statute of Limitations**

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

**C.  Procedural Default**

There is no contention that the grounds raised herein are procedurally defaulted.

### III.  Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).   AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law.  *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

>   1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>   2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not

be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). With these standards in mind, the court will address the merits of Petitioner's ineffective assistance of counsel claims.

In effect, Petitioner claims that stand-in counsel, Stephen Curry, was not his attorney of record, as he was merely appearing for defense counsel Patrick Mohammed for purposes of seeking a postponement. He asserts that Mr. Curry was not legally authorized to advocate for him and to advise him to take the guilty plea.

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). As to the prejudice prong, a petitioner asserting ineffective assistance of counsel in the plea agreement context must demonstrate a "reasonable probability that, but for counsel's errors [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Maples v. Stegall*, 340 F.3d 433, 440 (6th Cir. 2003); *Beck v. Angelone*, 261 F.3d 377, 394 (4th Cir. 2001).

In his post-conviction decision, Judge Hargadon made the following observations:

On February 13, 2003, while on probation to Judge Glynn, Petitioner was arrested for Possession with Intent to Distribute a Controlled Dangerous Subjstance in Case No. 203092005, the case which ultimately wound up before Judge McCurdy. A conviction on the charge would also have violated Petitioner's probation under Judge Glynn.

Because Petitioner was arrested while he was on probation before Judge Glynn, the attorney for Petitioner prior to Mr. Patrick Mohammed, Amy Coutant of the Office of the Public Defender, filed a Motion to Transfer Probation in Judge Glynn's case to Judge McCurdy. The transfer was to allow for a negotiated disposition in both cases on June 28, 2004. Judge Glynn granted the motion.

Sometime before the trial in the case before Judge McCurdy, Petitioner retained Mr. Mohammed. On the day of the trial, Mr. Mohammed, who was unable to attend the trial, contacted Mr. Stephen Curry to stand in for him in order to have the case postponed to a later date. Mr. Curry appeared on June 28, 2004 to enter the appearance of Mr. Muhammad and to request a postponement in the case. Mr. Curry also brought to the Court's attention the fact that Judge Glynn had agreed to transfer the VOP case to Judge McCurdy for a consolidated plea of both pending cases. Initially, Judge McCurdy refused to accept the transfer of probation on the grounds that Petitioner was seeking a postponement and a disposition of the case. Following some discussion between the state and the Court, with Mr. Curry present,

>the Court proposed a sentence of five years for the case before Judge McCurdy and five years for the VOP, both to run concurrent with each other and with the time Petitioner was serving on the parole violation. Mr. Curry relayed the Court's offer to Petitioner.
>
>Petitioner then began a direct discussion with the Court regarding the status of his VOP case and the fact that his probation agent did not recommend that he be violated until after he had been released on the four-year sentence imposed by Judge Ross. Transcript, 7-13. To which Judge McCurdy succinctly stated, "Well, so what? I mean it doesn't make any difference...." Transcript, 10.
>
>Judge McCurdy agreed to run the five years concurrent with the time Petitioner was serving on the parole retake stemming from his conviction before Judge Ross. Petitioner then agreed to accept the Court's offer. Transcript, 13.

Paper No. 11, Ex. 9.

After discussing the standard for proving ineffective assistance of counsel, Judge Hargadon determined that Petitioner could not show that trial counsel's representation constituted unreasonable professional judgment and that even if counsel was ineffective, how such ineffectiveness was prejudicial. Judge Hargadon found that Petitioner had failed to demonstrate that Mr. Curry's representation was deficient or prejudicial to Petitioner's case because: (1) Petitioner had raised a key argument himself[2] and did not need Mr. Mohammed or Mr. Curry to make the argument for him; and (2) the record showed that Petitioner had received a good deal in light of the charges that he faced. *Id.*, Ex. 9 at 5-6.

Insofar as Petitioner alleged that Mr. Curry was ineffective in advocating and negotiating a plea on Petitioner's behalf when he was merely stand-in counsel, Judge Hargadon concluded that post-conviction relief was unwarranted. He opined that:

>As explained above, Petitioner's record was accurately set forth before the Court. Also, the Court clearly explained the rights that petitioner was relinquishing by pleading guilty. Transcript, 16-20. The Court further explained that the sentence

---

[2] Petitioner had indicated that Mr. Curry was ineffective because he did not raise the issue of the expiration of the probationary term prior to the filing of the violation warrant. Judge Hargadon correctly observed that Petitioner had raised the argument himself and it was rejected by Judge McCurdy.

7

being imposed would run concurrent with any probation or parole violation he would get. Transcript, 17. Finally, Petitioner, a 45 year-old college graduate, then indicated that he was freely and voluntarily entering into the guilty plea. Transcript, 18.

At his post conviction hearing, Petitioner offered no evidence to support his allegation that his entering into the plea agreement was neither knowing nor voluntary; as such, the allegation made by Petitioner is an uncorroborated claim. Petitioner failed to put forward any evidence to substantiate this claim, and therefore failed to meet his burden....

Paper No. 11, Ex. 9 at 7.

Judge Hargadon's decisions shall not be overturned. *See* 28 U.S.C. § 2254(d) & (e). While it appears that Mr. Curry made a appearance in the case on behalf of Mr. Mohammed's due to the latter's unavailability and the appearance was initially made to seek a postponement, a plea was presented at the proceeding and was fully discussed by all parties. Petitioner made no objection to Mr. Curry's representation, accepted the plea, and during the plea colloquy indicated that he was satisfied with Mr. Curry's services. Petitioner has failed to project any evidence demonstrating that Mr. Curry's performance was deficient in any manner.[3]

---

[3]  To be valid, a guilty plea must be knowing and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970). This is required because a plea of guilty constitutes a waiver of several constitutional rights including the Fifth Amendment right against compulsory self-incrimination and the Sixth Amendment rights to a jury trial and to confront one's accusers. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). To enter into a knowing and voluntary guilty plea, the defendant must be aware of the constitutional rights he is waiving by pleading guilty as well as the substance of the charges to which he is pleading guilty. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). His decision to plead guilty must be free from actual or threatened harm by the state or from mental coercion by the state which overbears his will. *Brady*, 397 U.S. at 750.

At the time of his plea colloquy, Petitioner was forty-five years old with a Bachelor of Science degree from Morgan State University. He informed the court that: he spoke and understood English; he had no disability which would affect his judgment; and he was not under the influence of drugs or alcohol. The court explained that by pleading guilty he was waiving his right to: (1) put on a defense; (2) be tried by a judge or jury; and (3) most of his appellate rights. Petitioner was further asked if he was satisfied with the services of counsel. He responded in the affirmative. He was also asked whether his plea was made under threat or under a promise other than the plea agreement to get him to plead guilty. He answered no. The prosecutor then summarized the evidence he would produce if Petitioner insisted on being tried. No objection was raised. Based on the plea colloquy, the Court is satisfied that Petitioner entered a knowing and voluntary plea.

Further, there is no prejudice demonstrated here because the plea was a good deal and was favorable to Petitioner. The plea was offered in exchange for two concurrent 5-year terms. Petitioner was facing the imposition of the original sentence imposed in 1999 as to the violation of probation charge. Further, if he had gone to trial and been found guilty on the drug charge before Judge McCurdy, he was facing a maximum sentence of 20 years. In short, even if counsel's performance was shown to be deficient, Petitioner has failed to establish that but for Mr. Curry's errors he would not have pleaded guilty.

### IV. Conclusion

In light of the foregoing, the Court finds no basis to overturn the post-conviction decision. Accordingly, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.

Date: October 24, 2006                           /s/
                                        Alexander Williams, Jr.
                                        United States District Judge